[Cite as *Molai v. Standing Rock Cemetery Bd. of Trustees*, 2019-Ohio-2095.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| FRED MOLAI, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | | **CASE NO. 2018-P-0059** |
| - vs - | : | |
| STANDING ROCK CEMETERY BOARD OF TRUSTEES, | : | |
| | : | |
| Defendant-Appellee. | | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2015 CV 00072.

Judgment: Affirmed.

*Douglas M. Kehres*, Kehres & Farah, 638 West Main Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Chad E. Murdock*, 228 West Main Street, P.O. Box 248, Ravenna, OH 44266 (For Defendant-Appellee).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Fred Molai ("Molai"), appeals a judgment in the Portage County Court of Common Pleas in favor of appellee, Standing Rock Cemetery Board of Trustees ("Standing Rock"), for injunctive relief regarding usage of a series of burial lots owned by Molai. We affirm the trial court's judgment.

{¶2} The facts leading up to the dispute between the parties are essentially undisputed. From 2011 to 2013, Molai purchased a total of twelve contiguous cemetery

lots from Standing Rock. Each cemetery lot deed contained the following conveyance and restrictive language:

> To have and to hold the same to the use of the said Fred Molai and his heirs and assigns forever, for the purposes of burial only, subject to the Cemetery laws of this State, and the rules and regulations prescribed by the officers having control of said Cemetery.

{¶3} Thereafter, Molai had his son buried in one of the middle lots. He placed various ornaments and decorations on the remaining lots surrounding his son's lot, including fencing, a flower garden, and wooden poles approximately six feet high with posters depicting his son.

{¶4} On September 12, 2013, Standing Rock determined that the posters were in violation of the cemetery rules and regulations. Correspondence sent to Molai the following day requested a compromise whereby the posters would be mounted on metal u-channel posts—which would not require excavation into the ground—and lowering of the posters so that they would not tower over the headstone at the gravesite. Molai refused this compromise, and the parties both engaged in the present litigation requesting injunctive relief.

{¶5} The trial court found the following cemetery rules and regulations, which were in place and presented to Molai at the time he purchased all of the twelve cemetery lots, to be relevant regarding the items placed on the lots:

> Section IV(c) "No person shall remove any object from any place in the cemetery or make any excavation without the consent of the superintendent."
>
> Section V "Standing Rock Cemetery hereby reserves and retains control and supervision of all lots. The cemetery imposes upon its caretaker the duty to enter upon any lot and prohibit, modify or remove any structure, object, improvement or adornment which may have been placed thereon in violation of the rules or which may be

2

considered objectionable or injurious to the lot, to adjoining lots or to the general appearance of the cemetery."

{¶6} Given these applicable rules, the following evidence and testimony was produced at trial.

{¶7} The cemetery superintendent, Roger Donell, testified that he helped Molai with placing the artificial flower garden on the lots. With regard to the poles and posters, he testified that he did not consent to their placement, and he informed Molai that they would need to be removed if people found them to be objectionable. Further, he testified that there were no other lots, to his knowledge, that had freestanding signs or posters similar to what Molai had placed on his lots.

{¶8} There was also testimony from the clerk treasurer for Standing Rock, as well as another lot owner at the cemetery, that the posters were objectionable and "gaudy." Molai's counsel challenged the clerk treasurer regarding the subjective nature of the rules on cross examination:

> Q. Okay. But when you say that when somebody does something with their gravesite that is different, and two or three people and the trustees think it's different, then you just think you have the right to say you can't do that, that's different, that's different than what other people do?
>
> A. To that extent, yes.
>
> Q. To what extent?
>
> A. To the extent that there isn't anything else like this in the cemetery, that it's, what I would call, gaudy. It's not representative of, in my estimation -- and, again, it's a call that we as trustees made that --
>
> Q. So, again, you don't have, and obviously, and I don't want to get factitious here, but you don't have a gaudy rule in your rules, that if something is gaudy we can tell you to take it down; right?

3

A. No.

Q. Well, I mean, isn't that kind of dangerous, that somebody who buys a plot and decorates it on -- according to the rules, that someone can just say, that's gaudy. Take it do [sic] down. I mean, that is so subjective. You know, we might bring 100 people in here to look at this gravesite and maybe 40 of them might say that's the most beautiful thing I've ever seen. So I don't understand where the trustees are coming from, that's gaudy.

A. By definition, if I might answer that.

Q. Sure.

A. Webster's Dictionary, gaudy is an adjective. It's too bright and heavily decorated. Flashy. In your face. Not in a good way. Excessive. Those are the --

Q. I know what gaudy means. I don't need Webster. I know what it means

A. Well, I'm just letting you know --

Q. But it's subjective; isn't it?

A. Oh, it is.

Q. So if I buy a plot in your cemetery, do I have to say, well, if I put up a purple flower, they might consider that gaudy, even though the rule doesn't have anything to do with it?

A. We wouldn't.

Q. Well, you say you wouldn't, but you might -- whatever I put there you might say that's gaudy. All right. We'll move on. That's really what this is about. This is gaudy; right? It's gaudy?

A. No. It was – it's about things were placed in the gravesite that is [sic] not intended to have people buried in them, and it didn't go through the superintendent and we don't approve of it.

{¶9}  After hearing the testimony and reviewing the evidence submitted by the parties, the trial court concluded that the deed for each lot contained a covenant that runs with the land subjecting each lot to the rules and regulations of the cemetery.  Under

4

those rules, Molai was not permitted to excavate without permission from the superintendent. Based on the size and height of the poles, the court concluded that some excavation must have occurred in order to secure them into the ground.

{¶10} Ultimately, the trial court concluded that the poles and posters were placed by means of unauthorized excavation and that they also failed to conform with the general appearance of the cemetery, in further violation of the rules. The court did not find that this conclusion extended to the fencing or artificial flowers on the lots. The trial court ordered removal of the poles and posters within ten days.

{¶11} Molai voluntarily dismissed his pending claim for damages with regard to the dispute and filed a timely notice of appeal. He raises the following assignment of error:

{¶12} "The Court erred in finding by clear and convincing evidence that Appellant had violated the rules applicable to his son's gravesite and therefore granting Appellee's request for injunctive relief."

{¶13} "[U]nless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments." *Perkins v. Village of Quaker City*, 165 Ohio St. 120, 125 (1956), citing 21 Ohio Jurisprudence, Section 17, at 1006; 43 Corpus Juris Secundum, Injunctions, Section 14, at 420; 28 American Jurisprudence, Section 35 at 230. "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason." *Carson v. Holmes*, 11th Dist. Portage No. 2010-P-0007, 2010-Ohio-4199, ¶23, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Put another way, an abuse of discretion is the trial court's failure to exercise sound, reasonable, and legal decision-making. *State*

5

*v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).  Further, an abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact."  *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.) (citations omitted).

{¶14}  "[A]s a matter of general principle, a cemetery/burial plot is regarded as property in which title may descend to heirs, and that the grantee of a burial lot takes an easement; to wit, rights of burial, ornamentation, and erection of a monument, rather than an absolute title."  *In re Estate of Joiner*, 11th Dist. Lake No. 92-L-170, 1993 WL 257119, *3 (Jun. 30, 1993) (citations omitted).  As such, under the terms of the deeds Molai took title to the twelve burial lots subject to the rules and regulations of the cemetery; namely, the pertinent rules stated above regarding excavation on the lots and Standing Rock's rights to removal of objects which may be considered objectionable to the general appearance of the cemetery.

{¶15}  In the matter sub judice, Standing Rock presented testimony that the poles were excavated into the ground without the consent of the superintendent.  There was nothing in the record refuting that Molai excavated into the ground to secure the poles.  Molai's position at trial and on appeal is that other gravesites also had "objects and other things placed in the ground" but presumably were not found to be in violation of the rules.

{¶16}  Further, testimony was presented from multiple witnesses that the poles and posters were nonconforming with the general appearance of the cemetery.  Molai presented evidence that other gravesites possessed flowers and fencing; however, no evidence of poles or posters similar to Molai's was presented to the trial court.

**{¶17}** Based on this, the court found that the artificial flowers and fencing conformed with the rules and regulations but that the poles and posters did not conform with respect to both the unauthorized excavation clause and the nonconformity with general appearance of the cemetery clause.

**{¶18}** The record before this court establishes that the trial court did not abuse its discretion by granting the injunction and ordering the posters and poles to be removed. We determine that the decision was supported by competent, credible evidence that Molai violated the rules applicable to his son's gravesite and that the trial court did not act unreasonably, arbitrarily, or unconscionably.

**{¶19}** Molai's sole assignment of error is without merit.

**{¶20}** The judgment of the Portage County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.